### VANCE, Exr v WARNER et

Ohio Appeals, 5th Dist, Knox Co

Decided July 9, 1934

Walter G. Harris, Mt. Vernon, Charles S. F. Wander, Mt. Vernon, James R. Fitzgibbon, Newark, and L. C. Stilwell, Mt. Vernon, for plaintiff in error.

L. Tate Cromley, Mt. Vernon, and Jay S. McDevitt, Mt. Vernon, for defendants in error.

## OPINION

By LEMERT, J.

The demurrer admits the truth of the allegations of the petition, and this includes whatever may be implied from the allegations, but in so far as is necessary to determine the question raised on this demurrer and no further.

It was the claim of the defendants below that there is no authority, either constitutional or statutory, whereby stockholders of a building and loan association can be required to pay what is commonly known as "double liability" on stock of an association other than stock of a banking association. It is conceded that there is no statutory law imposing double liability on holders of stock in a building and loan association, but it is the claim of the plaintiffs below that §3, **Article 13, of the Constitution of 1851,** does impose this obligation on all stockholders of corporations authorized to receive money on deposit.

**Section 3, Article 13 of the Constitution**

**of 1851**, with amendments as amended September 3, 1912, is now a part of the constitution of this state, and reads as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her; except that stockholders of corporations authorized to receive money on deposit shall be held individually responsible equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.  No corporation not organized under the laws of this state, or of the United States, or person, partnership or association, shall use the word "bank," "banker" or "banking," or words of a similar meaning in any foreign language, as a designation or name under which business may be conducted in this state unless such corporation, person, partnership or association shall submit to inspection, examination and regulation as may hereafter be provided by the laws of this state."

Building and loan companies are creatures of law, but the name "building and loan association company" in no wise indicates with any degree of certainty the manner in which the various building and loan companies of the state of Ohio conduct their business.

Sec 9648, GC, under the provisions of the code regulating building and loan companies, reads as follows:

"To receive money on deposit and all persons, firms, corporations and courts, their agents, officers and appointees may make such deposits and stock deposits but such corporation shall not pay interest thereon exceeding the legal rate when such deposit or the stock deposits are made to the joint account of two or more persons, whether adults or minors, with a joint order to the corporation that such deposits or any part thereof are to be payable·on the order of any one or more of·such joint depositors and continue to be so payable notwithstanding the death or incapacity of one or more of the persons making them, such account shall be payable to any one or more of such survivors or survivor or order notwithstanding such death or incapacity; no recovery shall be had against

such corporation for an amount so paid and charged to such account."

In the case of Liley Building & Loan Co. v Miller, 280 Fed. Report, p. 144, the court there held that the question there is, whether or not the name used by the corporation determined its liability and non-liability, or whether the nature of the business conducted determined the liability.

Under the provision of §9648, GC, building and loan associations may receive deposits, and under the provisions of §3, Article 13, stockholders of corporations authorized to receive money on deposit are individually responsible for debts and engagements of the corporation to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.

The provisions of the constitution hereinbefore referred to was submitted to the people for their approval and its provisions were couched in plain, ordinary and simple language, about the meaning of which there ought to be no dispute, unless, as has been suggested by those opposing the enforcement of the double liability, it was the intention of the members of the constitutional convention to limit it to banking corporations, only.

Examination of the proceedings of the constitutional convention which submitted the amendment ·are helpful in that it appears from the debates that building and loan associations as a class were not intended to · be exempt from the provisions of the act.  On the other hand, the debates clearly disclose that building and loan associations that engaged in receiving deposits as a· bank, were intended to be included in its provisions.

·A reading of the proceedings and debates on Proposal No. 93, which was an amendment to §3, Article 13, of the Constitution of 1851, reported in Volume 2, pages 1165 to 1187, inclusive, of the proceedings and debates of the convention are more interesting and enlightening on the question raised by this demurrer.

·It is ·apparent that the committee on banks and banking had under consideration two proposals to be submitted as a part of the constitution; one guaranteeing bank deposits; and the other imposing a double liability on stockholders of corporations receiving money on deposit; and the committee recommended to the convention §3 of Article 13 as finally adopted, with the exception that there was added during debate the provision for inspection of all

corporations using the word "bank" or "banking."

It will be noted that during the time the above proposal was before the constitutional convention, that time after time during the debate it was stated very definitely that associations' doing a purely building and loan business could not be included in its terms, by reason of the very language itself. A pure building and loan company does not receive money on deposit, but the debate discussed very definitely that building and loan associations that received money on deposit are included within its terms.

This act was designed to protect depositors in banks, but when building and loan companies invade the province of banks, and accept deposits they are amenable to its terms.

The name does not necessarily distinguish between the nature of the business conducted by a building and loan company and a bank. It is not the question of the manner in which the corporation pays out the money—it is a question of the manner in which they receive it. If a building and loan association receives money in payment of stock, the member becomes a stockholder. If a borrower becomes a member, purchases stock and pays upon the same for the purpose of finally liquidating his loan, he becomes a member and stockholder. If an individual purchases so-called "running stock" and pays it in installments, he becomes a stockholder to the extent of his purchase. And if the loan company does not receive deposits, then these various stockholders would be liable only to the extent of the stock they had contracted to purchase; but when the stockholders permit their officers or authorized agents to receive money on deposit, then all members are liable for the debts of the company, to the extent of their stock holdings, in double the amount of its value.

It must be borne in mind in the consideration of this demurrer to the petition before us, that we are dealing with certified stock and not with running stock.

In the case of **Bayless et v Barnett, Receiver, 110 Oh St, 305,** the court had under consideration the right of a borrower from a building and loan association to have credited on his mortgage the amount paid on running stock at the time the association was declared insolvent and placed in the hands of a receiver.

While the issue in this case under consideration was not involved in the Bayless case, yet the syllabus of the case and the language used by Judge Matthias in rendering the opinion throws much light on the attitude of the court as to the obligation assumed by the stockholders in the interest of the creditors. The syllabus is as follows:

"1. The members of a building and loan association, whether borrowers or non-borrowers, have a mutual interest in its affairs; sharing alike its earnings, they must alike bear its losses.

"2. A borrowing member of a building and loan association occupies a two-fold association; as a debtor, he must repay his loan, with stipulated interest. As a stockholder, he may participate in the earnings and must contribute to the losses sustained."

On page 308 of the opinion, we note the following language:

"It is to be borne in mind that we are dealing with a question involving the settlement of the affairs of an insolvent building and loan company, for which the statutes have made no express provisions. But the borrower is a member, just as is a non-borrowing subscriber for stock of the company, and neither is entitled to any favor or preference in the settlement of the affairs of the company. **They have equal powers and like responsibilities for the management or mismanagement of the association.**"

In the above case it will be noted that the Supreme Court has said that the members of an association are the stockholders. They have a mutual interest in the affairs and they share alike in the earnings. They must alike bear its losses. And the constitution of Ohio has declared very definitely that if those responsible for the management of a building and loan association, (which are the stockholders), receive money on deposit, they are individually liable to the creditors in double the par value of the stock.

It therefore follows, and is the holding of this court, that the court below was right in its conclusions and holding in overruling the demurrer to the petition and finding and ruling of the court below will therefore be affirmed. Exceptions may be noted.

MONTGOMERY, J, concurs.
SHERICK, PJ, dissents.